IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF MOTION TO DISMISS** |
| vs. | ) | |
| | ) | |
| Andrew Sayeed Myrie, | ) | |
| | ) | Case No. 4:14-cr-133 |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

[¶ 1]   The factual allegations against Myrie are set forth in paragraphs 60 and 74 of the indictment.

Paragraph 60 of the indictment alleges:

> O'Hara's emails show that ANDREW SAYEED MYRIE later forwarded an image of a Jamaican Identification card of MYRIE to a receiving email address used by the conspirators. Later, in a letter to Jamaican Custom officers, "Andrew Myrie" claimed to be a manager of Uptempo International Music Records (UIM). MYRIE included a copy of an alleged performance and production contract with the letter which claimed to represent a performance and production deal between UIM and Bauder. In the letter, MYRIE claimed O'Hara was carrying money as a deposit from Bauder for delivery to MYRIE as part of UIM's contract with Bauder. The email address that was used to send a pre-addressed unsigned letter to Bauder is the receiving email address O'Hara used when he sent the image from MYRIE's identification card. The letter was preaddressed to the "Jamaica Customs Department, Sangster International Airport, Montego Bay, Jamaica" and stated that Bauder was a U.S. citizen and entrepreneur who provided O'Hara "$100,000.00 USD in cash for down payment as instructed by the booking agent for Jukeboxxproduction," but that Bauder later decided to use UIM for his "yearlong tour consisting of Artist and Selectors." The letter further claimed that O'Hara failed to declare the $100,000 to Jamaican authorities which led to seizure of the money.

> *Id.* at ¶ 60.

[¶ 2]   Paragraph 74 of the indictment alleges, in part:

> In our about November 2013, ANDREW SAYEED MYRIE sent or caused to be sent numerous emails containing, among other things, drafts of a letter regarding a fraudulent

-1-

record contract that MYRIE entered into with Bauder, and documents sent to the Jamaican Customs officials containing fraudulent information.

*Id.* at ¶ 74.

## LAW AND ARGUMENT

**ISSUE I:** **The indictment fails to sufficiently allege Conspiracy to Commit Wire Fraud and Mail Fraud (Count One) under 18 U.S.C. § 1349 and Money Laundering Conspiracy (Count Five) under 18 U.S.C. § 1956(h)**

[¶3] In reviewing the sufficiency of an indictment, the Court accepts the government's allegations as true, without reference to allegations outside the indicting document. *United States v. Steffen*, 678 F.3d 1104 (8th Cir.2012)(affirming dismissal of indictment for failing to sufficiently allege a scheme to defraud under the mail, wire, and bank fraud statutes). "However, where an indictment alleges a scheme to defraud under the bank, mail, or wire fraud statutes, it must specify facts not merely in the general words of the statute, but with such reasonable particularity...as will...apprise the defendant, with reasonable certainty, of the nature of the accusation...and as will enable the court to say that the facts stated are sufficient in law to support a conviction." *Steffen* at 1113.

[¶4] "To establish a conspiracy, the government must prove beyond a reasonable doubt at trial that there was an agreement to achieve some illegal purpose, that the defendant knew of this agreement, and that the defendant knowingly joined the conspiracy. *United States v. Oates*, 173 F.3d 651 (8th Cir.1999). "Proof of an agreement, express or implied, to commit the offense is required.." *Hanis v. U.S.*, 246 F.2d 781, 786 (8th Cir.1957). "Moreover, there must be evidence that the defendant entered into an agreement with at least one other person and that the agreement had as its objective a violation of law." *United States v. Fitz*, 317 F.3d 878, 881 (8th Cir.2003)(evidence was insufficient to prove that defendant was aware of conspiracy and knowingly agreed to join it). "A conspiracy may be wholly inferred from circumstantial evidence, and only slight evidence connecting a

defendant to the conspiracy is required once the conspiracy itself is established." *Oates, supra* at 660.

[¶ 5]  Myrie is charged with Conspiracy to Commit Wire Fraud and Mail Fraud (Count One) under 18 U.S.C. § 1349[1] and Money Laundering Conspiracy (Count Five) under 18 U.S.C. § 1956(h)[2]. In this case, even if one accepts the government's allegations as true, the government has not alleged sufficient facts with reasonable particularity that Myrie knew of any agreement or entered into any agreement that had as its objective a violation of law, or that he ever knowingly joined any conspiracy.

[¶ 6]  At best, the government has alleged an image of a Jamaican Identification card of Myrie contained in an email of Deon-Ville Antonio O'Hara, and also an unsigned letter contained in an email of Deon-Ville Antonio O'Hara. Indeed, the government has not even alleged sufficient facts with reasonable particularity that Myrie ever sent an email. These allegations, even if accepted as true, are insufficient as a matter of law to allege Conspiracy to Commit Wire Fraud and Mail Fraud (Count One) and Money Laundering Conspiracy (Count Five).

---

[1] Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

[2] Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

**ISSUE II:** The indictment alleges an improper extraterritorial application of the Conspiracy to Commit Wire Fraud and Mail Fraud (Count One) statute under 18 U.S.C. § 1349 and Money Laundering Conspiracy (Count Five) statute when any alleged conspiracy to commit a crime against a private individual was formed outside the jurisdiction of the United States, the United States was not involved, and the defendant is not a citizen of the United States.

[¶ 7]   18 U.S.C. § 3231 grants federal courts jurisdiction over " *all offenses* against the laws of the United States" (emphasis added). *U.S. v. Drefke*, 707 F.2d 978 (8th Cir.1983). While neither conspiracy statute (18 U.S.C. § 1349 or 18 U.S.C. § 1956(h)) expressly addresses whether they apply to a conspiracy formed outside the United States, "[I]t is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

[¶ 8]   "This principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's power to legislate." *Id.* at 255. "It rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign matters." *Id.* at 255. "Thus, unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions." *Id.* at 255. "The canon or presumption applies regardless of whether there is a risk of conflict between the American statute and a foreign law. *Id.* at 255. "When a statute gives no clear indication of an extraterritorial application, it has none." *Id.* at 255.

[¶ 9]   Moreover, "[T]he Supreme Court has held that where the conspiracy is laid within the jurisdiction of the federal courts, federal jurisdiction exists though the acts in furtherance of the conspiracy occurred outside the jurisdiction of the federal courts." *United States v. Todd*, 657 F.2d 212 (8th Cir.1981), *citing Ford v. United States*, 273 U.S. 593, 606-607 (1927)("The conspiracy was

laid at the Bay of San Francisco, which was within the jurisdiction of the court.") In *Todd*, the Eighth Circuit found that the conspiracy was originally planned within the boundaries of Fort Leonard Wood and that therefore there was sufficient evidence to determine that if a conspiracy was formed it was formed within the jurisdiction of the federal courts. *Id.* at 215.

[¶ 10]  An exception to this presumption against extraterritoriality exists on a silent statute where the United States is involved. In *United States v. Bowman*, 260 U.S. 94 (1922), the Court addressed the extraterritorial reach of a criminal statute prohibiting a conspiracy to defraud a corporation in which the United States was a shareholder. *Id.* at 95. The defendants in *Bowman* hatched a plot to bill the U.S. government for fuel that was never ordered. *Id.* at 95. The plot was hatched while on the high seas or in foreign ports; three of the conspirators were Americans, the fourth from Britain. *Id.* at 95. The three Americans were caught and charged, but the British defendant eluded capture. *Id.* at 95.

[¶ 11]  The American defendants in *Bowman* moved to dismiss the indictment on the ground that the crime had not been committed within the U.S., and was therefore outside the reach of the criminal fraud statute. *Id.* at 97. The Supreme Court disagreed, concluding that the criminal statute did apply to the three American citizens:

> We have in this case a question of statutory construction. The necessary locus, when not specially defined, depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations. Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds, which affect the peace and good order of the community must, of course, be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed out side of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard...
>
> But the same rule of interpretation should not be applied to criminal statutes which are, as

a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents. Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense...

*Id.* at 97-98.

[¶ 12] The *Bowman* Court declined to address whether the British conspirator could be prosecuted:

The three defendants whe were found in New York were citizens of the United States, and were certainly subject to such laws as it might pass to protect itself and its property. Clearly it is no offense to the dignity or right of sovereignty of Brazil to hold them for this crime against the government to which they owe allegiance. The other defendant is a subject of Great Britain. He has never been apprehended, and it will be time enough to consider what, if any, jurisdiction the District Court below has to punish him when he is brought to trial.

*Id.* at 103.

[¶ 13] In this case, any alleged conspiracy to commit a crime was formed outside the jurisdiction of the United States. Even if it could be said that Myrie knew of an agreement or entered into any agreement that had as its objective a violation of law, or that he ever knowingly joined any conspiracy, that would have taken place in the foreign country of Jamaica, and not in the United States. Besides the presumption against extraterritoriality that congressional legislation is meant to apply only within the territorial jurisdiction of the United States unless a contrary intent appears, both *Ford, supra,* and *Todd, supra,* instruct that federal jurisdiction does not exist when a conspiracy is formed outside the jurisdiction of the federal courts.

[¶ 14] Moreover, the indictment in this case does not charge out any acts of conspiracy involving the United States. Rather, the indictment charges out conspiracy against private individuals. Since

the government is not involved, the exception carved out in *Bowman, supra,* to allow the United States to defend itself is foreclosed. Furthermore, Myrie was not a citizen of the United States, and it remains unclear under *Bowman* whether or not the Court has jurisdiction over any of the alleged acts of Myrie in the foreign country of Jamaica given his status as a non-citizen of the United States

**ISSUE III:** **The indictment fails to sufficiently allege Wire Fraud (Count Two) under 18 U.S.C. § 1343.**

[¶ 15] Myrie is charged with Wire Fraud (Count Two), under 18 U.S.C. § 1343[3]. The government must prove each essential element of wire fraud to establish the defendant's guilt: (1) intent to defraud, (2) participation in a scheme to defraud, and 3) the use of a wire in furtherance of the fraudulent scheme. *United States v. Rice*, 699 F.3d 1043 (8th Cir.2012).

[¶ 16] In this case, even if one accepts the government's allegations as true, the government has not alleged sufficient facts with reasonable particularity that Myrie had an intent to defraud, or that he participated in a scheme to defraud, or that he used a wire in furtherance of the fraudulent scheme.

[¶ 17] At best, the government has alleged an image of a Jamaican Identification card of Myrie contained in an email of Deon-Ville Antonio O'Hara, and also an unsigned letter contained in an email of Deon-Ville Antonio O'Hara. Indeed, the government has not even alleged sufficient facts

---

[3]Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

with reasonable particularity that Myrie ever sent an email. These allegations, even if accepted as true, are insufficient as a matter of law to allege Wire Fraud (Count Two).

**ISSUE IV:** **The indictment alleges an improper extraterritorial application of the Wire Fraud (Count Two) statute under 18 U.S.C. § 1343 where any acts of wire fraud were against a private individual, the United States was not involved, and the defendant is not a citizen of the United States.**

[¶ 18]    In 1956, the Wire Fraud statute, 18 U.S.C. § 1343 (see n. 3 above), was amended to include transmission "in foreign commerce." Pub.L. No. 84-688, 70 Stat. 523 (1956). See S.Rep. No. 1873, 84th Cong.2d Sess. 2-3 (1956); H.R.Rep. No. 2385, 84th Cong. 2d Sess. 1-2 (1956). However, that term alone does not evince congressional intent for extraterritorial application.

[¶ 19]    In 1991, the Supreme Court stated that unless "the affirmative intention of the Congress is clearly expressed, we must presume [a statute] is primarily concerned with domestic conditions," and held that subject matter jurisdiction should be found only on clear evidence of congressional intention that a statute have extraterritorial application. *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244, 251 (1991)("we have repeatedly held that even statutes that contain broad language in their definitions of 'commerce' that expressly refer to 'foreign commerce' do not apply abroad.")

[¶ 20]    In *Pasquantino v. United States*, 544 U.S. 349 (2005), the Supreme Court interpreted the wire fraud statute and stated:

> Finally, our interpretation of the wire fraud statute does not give it "extraterritorial effect." Petitioners used U.S. interstate wires to execute a scheme to defraud a foreign sovereign of tax revenue. Their offense was complete the moment they executed the scheme inside the United States; "[t]he wire fraud statute punishes the scheme, not its success." This domestic element of petitioners' conduct is what the Government is punishing in this prosecution, no less than when it prosecutes a scheme to defraud a foreign individual or corporation, or a foreign government acting as a market participant.
>
> *Id.* at 370 (citations omitted).

[¶ 21]    Moreover, the indictment in this case does not charge out any acts of wire fraud involving

the United States. Rather, the indictment charges out wire fraud against private individuals. Since the government is not involved, the exception carved out in *Bowman, supra,* to allow the United States to defend itself is foreclosed. Furthermore, Myrie was not a citizen of the United States, and it remains unclear under *Bowman* whether or not the Court has jurisdiction over any of the alleged acts of Myrie in the foreign country of Jamaica given his status as a non-citizen of the United States.

[¶ 22] Finally, the rule of lenity counsels against extraterritorial application of § 1343 to acts where the United States is not involved and the defendant is not a citizen of the United States. The Supreme Court has long held that, when confronted with "two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally,* 483 U.S. 350, 359–360 (1987); see *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–222 (1952).

[¶ 23] This interpretive guide is particularly appropriate here. Wire fraud is a predicate offense under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961(1) (2000 ed., Supp. II), and the money laundering statute, § 1956(c)(7)(A) (2000 ed.). A finding that particular conduct constitutes wire fraud therefore exposes certain defendants to the severe criminal penalties and forfeitures provided in both RICO, see § 1963 (2000 ed.), and the money laundering statute, § 1956(a), (b) (2000 ed. and Supp. II).

## CONCLUSION

[¶ 24] WHEREFORE, in light of any of the foregoing reasons, the Defendant, Andrew Sayeed Myrie, by and through his attorneys, Nathan P. Diamond and Chad R. McCabe, respectfully requests this Court to dismiss all counts against Myrie (Counts One, Two, and Five) alleged in the indictment.

Dated this 5th day of June, 2015.

/s/ Nathan P. Diamond, P.A.
**NATHAN P. DIAMOND, ESQUIRE**
Attorney for the Defendant
888 Biscayne Boulevard, Suite 501
Miami, FL 33132
(305) 371-5300
Attydiamon@aol.com

Dated this 5th day of June, 2015.

/s/ Chad R. McCabe
**CHAD R. MCCABE**
Attorney for the Defendant
402 East Main Ave., Suite 100
Bismarck, ND 58501
(701) 222-2500
crmccabe@midconetwork.com
N.D.State Bar ID #05474

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of June, 2015, the following document:

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

> Clare R. Hochhalter
> Asst. U.S. Attorney
> Email: clare.hochhalter@usdoj.gov

/s/ Chad R. McCabe
**CHAD R. McCABE**
Attorney for Defendant